IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:14-cr-00070 |
| | : | |
| v. | : | |
| | : | (Judge Kane) |
| ANTHONY SISTRUNK, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Before the Court is Defendant Anthony Sistrunk's motion to suppress evidence obtained during a search of 326 West Philadelphia Street in York, Pennsylvania. (Doc. No. 439.) The Court conducted a hearing on the motion on August 28, 2015. The motion has been briefed and is ripe for disposition. For the reasons that follow, the Court will deny Defendant's motion.

## I. BACKGROUND

In this motion, Defendant Anthony Sistrunk seeks to exclude evidence obtained from a search of Defendant's second floor apartment at 326 West Philadelphia Street, in York, Pennsylvania. (Doc. No. 439.) On September 17, 2014, a federal grand jury returned a second superseding indictment charging Defendant and co-defendants with conspiracy to distribute controlled substances. (Doc. No. 78.) On September 22, 2014, Magistrate Judge Carlson issued a warrant that authorized the search in question. (Doc. No. 439-3 at 5.) The warrant application bears the signature of Scott Endy, a Special Agent with the Department of Justice Bureau of Alcohol, Tobacco, Firearms and Explosives. (Id.)

Agent Endy attached a sworn affidavit to the warrant application detailing his own credentials and detailing information from the ongoing investigation into Defendant and his co-defendants for firearms and controlled substances crimes. (Doc. No. 439-3 at 6-29.) The

1

affidavit, which spans 24 pages, purports to establish the bases for probable cause to search Defendant's residence and the residences of two co-defendants. (Doc. No. 439-3 at 20.)

Agent Endy's affidavit contains numerous paragraphs describing the nature of the alleged Southside street gang, including its history, its drug and firearm trafficking, its violent relationship with rival gangs, its organizational structure, and the ways that members identify themselves to each other and outsiders. (Doc. No. 439-3 at 6-13.) The affidavit next introduces four confidential informants, numbered 1, 4, 15, and 20. According to the affidavit, "confidential informant 1 is a former member of the Southside Gang and is currently [facing] pending state charges of possession with intent and delivery of crack cocaine." (Id. at 13 ¶ 23.) Confidential informant 1, beginning in November of 2012, provided information to authorities about the Southside Gang's locations of operation, the gang's drug distribution network, and the gang's violent practices. (Id. at 13-14 ¶¶ 23-27.) According to the affidavit, confidential informant 4 "has been a Southside Gang member and is affiliated with the Cleveland Avenue crew or 'hustling block.'" (Id. at 14-15 ¶ 28.) Beginning on December 4, 2012, informant 4 "provided detailed information regarding the enterprise including the structure, organization, membership, and criminal activities" of the gang. (Id.) According to the affidavit, confidential informant 15, who is facing state drug charges, "is a Southside gang member in the Maple and Duke Crew." (Id. at 15-16 ¶ 33.) Beginning on October 24, 2013, confidential informant 15 described much of the same history and activity, including how the gang acquired firearms from "fiends" – drug users who brought the gang guns in exchange for crack cocaine. (See id.) According to the affidavit,b eginning on September 5, 2014, confidential informant 20 gave statements to the authorities, including "admitt[ing] participation in drug trafficking with Blood

2

gang members." (Id. at 17 ¶¶ 38-42.) Confidential informant 20 provided information about the gang's history and activities that is largely consistent with the information provided by the other informants. (See id.)

In relevant part, the affidavit next lists "specific evidence and current locations" about Defendant in paragraphs lettered (a)-(n). (Doc. No. 439-3 at 19-21.) These paragraphs reproduce statements about Defendant's participation in gang activities made by the confidential informants. (See id.) Confidential informant 1 identified Defendant, whose street name is "Kanye," "as a Southside Gang member in the Maple and Duke crew who was involved in the distribution of crack cocaine[.]" (Id. at 19 ¶ (a).) This statement was corroborated by the other informants. (Id. at 20 ¶¶ (b)-(e).) According to confidential informant 4, Defendant is "an older generation Southside Gang member who would encourage [younger members] to 'put in the work' or commit shootings of [rival] gang members." (Id. at 19-20 ¶ (b).) In addition, confidential informant 15 recounted a 2008 incident when Defendant and the informant were standing on the street when a rival gang member drove by them and opened fire, and the informant admitted to returning fire. (Id. at 20 ¶ (d).) Confidential informant 6 recounted an incident when Defendant, the informant, and another gang member fired several rounds at an individual who had stolen "a few hundred grams of crack cocaine" from them. (Id. at 20 ¶ (c).) The affidavit continues on to recount a number of gang-related events that involve Defendant, even if he was not a direct participant: for example, paragraph (f) recounts a shooting committed by Juan Henriguez during which Defendant was possibly a passenger in Henriguez's car.[1] (Id. at

---

[1] This individual is variably referred to as Henriguez or Henriquez. In full, the paragraph reads:

3

20 ¶ (f).) On April 6, 2009, police arrested Defendant after he fled from a traffic stop. (Id. at 20 ¶ (g).) In the car, police recovered a sawed off shotgun and a revolver. (Id.) While a jury acquitted Defendant of firearms charges, the jury convicted him of fleeing or eluding police, and Defendant received a sentence of between 30 and 84 months. (Id.) While in prison, visitor lists indicate that at least two of Defendant's co-defendants were on Defendant's list of approved visitors, and that other Southside gang members may have visited Defendant in prison.[2] (See id. at 20 ¶ (h).)

As to Defendant's residence, on September 28, 2014, York City Police Detective Scott Nadzom received information from a confidential informant that Defendant was living with his girlfriend at 326 W. Philadelphia Street in York, and that he was using her cellular phone. (Id. at 21 ¶ (j).) That same informant, referred to in the affidavit as "a confidential reliable source," also reported that Defendant "is engaged in the distribution of a synthetic drug known as

---

> On 7/8/07, the York City Police Department responded to a shooting incident at E. Poplar Street and Edgar Street, York, PA and identified the victim as Michael CONCEPION [sic] a Southside gang member who was fatally shot multiple times. Police observed several bullet holes in the victim's vehicle and on the outside of buildings in the area and recovered .223 caliber shell casings at the scene. Police also recovered from the victim's vehicle a Ruger Model P85, 9mm semi-auto pistol with an obliterated serial number and 3.2 grams of cocaine. Juan HENRIGUEZ was arrested for the murder and during a statement to police implicated Anthony SISTRUNK as being in the vehicle with him during the shooting.

(Id. at 20 ¶ (f).)

[2] At the hearing, defense counsel distinguished between those individuals listed on Defendant's approved visitor list and those who actually came to the prison to visit. Agent Endy testified that even if Defendant's fellow gang members did not visit the prison, their presence on his visitor list shows an association between Defendant and those individuals.

'Mollies.'" (Id.)  Tracking of the girlfriend's cell phone indicated that the cell phone was being used in a radius that included the address. (Id. at 21 ¶ (k).)  Defendant was also observed entering the residence with his alleged girlfriend. (Id. at 21 ¶ (m).)

Based on the representations in Agent Endy's affidavit and the superseding indictment, Magistrate Judge Carlson issued a search warrant for Defendant's residence on September 22, 2014, and law enforcement conducted the search and arrested Defendant on September 23, 2014. (Doc. Nos. 96; 440 at 2.)  "During the search, agents recovered physical evidence including documents, photographs, and newspaper articles." (Doc. No. 440 at 2.)  Defendant now seeks to suppress that evidence.

At the August 28, 2015 hearing, Agent Endy testified to the compiling and drafting of his affidavit.  He explained his references to the 2007 shooting of Michael Concepcion, in particular why he described the shooter as having "implicated" Defendant in the incident, when in fact the shooter acknowledged that Defendant did not actively assist in the shooting.  Agent Endy explained that his affidavit only indicated that the shooter implicated Defendant <u>as being in the car</u> with the shooter. (See also, Doc. No. 439-3 at 20 ¶ (f).)  As to the gun charges in York County stemming from the 2009 traffic stop, Agent Endy indicated that he was aware that Defendant had only been convicted of fleeing, but testified that his affidavit correctly reported that guns were found in the vehicle, and that Defendant was convicted of eluding police.  In response to questions concerning the time frame during which sources complained Defendant was dealing "mollies," Agent Endy explained that he believed that the source indicated that Defendant's drug dealing was ongoing.

## II.  DISCUSSION

### A. Standards governing motions to suppress

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. When a search warrant authorized a search, the proponent of the motion to suppress evidence from the search bears the burden of establishing that his or her Fourth Amendment rights were violated. United States v. Correa, 653 F.3d 187, 190 (3d Cir. 2011) (citing Rakas v. Illinois, 439 U.S. 128, 132 n.1 (1978)); see United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995). The challenger must make a showing by a preponderance of the evidence. United States v. Matlock, 415 U.S. 164, 178 n.14 (1974). At a hearing on a motion to suppress, "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." United States v. Richardson, 501 F. Supp. 2d 724, 734 (W.D. Pa. 2007) (citations omitted).

### B. Probable cause

Defendant argues that Endy's affidavit of probable cause was deficient, so the Court should suppress the evidence obtained during the search. (Doc. No. 440 at 3.) Specifically, Defendant argues that paragraphs 11, 12, 13, 14, 16, and 17 are deficient because the four corners of the affidavit do not establish the reliability of the confidential informants and because material omissions made the affidavit's representations misleading. (Id. at 6-11.) The Government argues that there is sufficient corroboration to support the informants' veracity, in particular consistency among them, and that any omissions Defendant identified are not material. (Doc. No. 508 at 8-33.)

Search warrants must be supported by probable cause. Probable cause for the issuance of

6

a warrant is found where, under the totality of the circumstances, "there is a fair probability that . . . evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S 213, 238 (1983). "[P]robable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime." United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (internal citations and quotations omitted). Upon a challenge to a probable cause determination, courts apply a deferential standard of review. United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents, 307 F.3d 137, 146 (3d Cir. 2002). This means that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Id. at 147 (quoting United States v. Jones, 994 F.2d 1051, 1054 (3d Cir. 1993)). The question before the Court is not whether probable cause actually existed, but instead whether Magistrate Judge Carlson possessed "a substantial basis for finding probable cause." Id. (internal quotations omitted).

"When the crime under investigation is drug distribution, a magistrate may find probable cause to search the target's residence even without direct evidence that contraband will be found there." United States v. Stearn, 597 F.3d 540, 558 (3d Cir. 2010). "[I]t is a reasonable inference to conclude that drug dealers often store evidence of drug crimes in their residences." Id. (quoting United States v. Burton, 288 F.3d 91, 104 (3d Cir. 2002)). In order for that inference to apply, there must be evidence supporting "three preliminary premises: (1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's drug activities." Burton, 288 F.3d at 104.

7

In Defendant's case, the Court finds that Magistrate Judge Carlson had a substantial basis for finding probable cause to search Defendant's residence. Agent Endy's affidavit details an alleged criminal conspiracy dating back years with consistent information between confidential informants that has been at least partially corroborated by direct police investigation. (See e.g., Doc. No. 439-3 at 20-21) (showing consistency between informant testimony that Defendant dealt synthetic drugs and lived at 326 W. Philadelphia with his girlfriend, and police corroboration of Defendant's residence through direct surveillance). The informants are also consistent in their description of the Southside Gang more generally. It is also salient that Magistrate Judge Carlson issued the search warrant concomitant with the arrest warrant after the grand jury returned an indictment of Defendant on drug dealing and conspiracy, and after a confidential informant reported less than a month prior to the warrant that Defendant was distributing synthetic drugs. The Court therefore finds that Magistrate Judge Carlson had a substantial basis for finding probable cause to search Defendant's residence.

Defendant has attacked the affidavit based on seven alleged deficiencies. The first two, alleged with regard to the confidential informants, is that the four corners of the affidavit do not establish the informants' veracity and that their information is stale. (Doc. No. 440 at 6-7.) However, the Court finds that the informants' reliability is adequately shown by the informants' consistency with each other and with direct investigations. In addition, the Court finds that the totality of the information is not stale, especially in light of the Third Circuit's guidance that "[w]here 'an activity'" like an ongoing gang conspiracy, "'is of a protracted and continuous nature, the passage of time becomes less significant'" to the question of whether information is stale. United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven

Cents, 307 F.3d 137, 148 (3d Cir. 2002) (quoting United States v. Tehfe, 722 F.2d 1114, 1119 (3d Cir.1983)).

Defendant also singles out individual paragraphs and claims that the affiant selectively included and excluded information from those paragraphs to mislead Magistrate Judge Carlson. (Doc. No. 440 at 8-10.) For example, Defendant argues that regarding the homicide of Michael Concepcion, Agent Endy "represented that [Defendant] was involved when he was not." (Id. at 7.) Defendant argues that Agent Endy should have included that eyewitnesses disagreed with each other and with the shooter about whether or not Defendant was present in the vehicle. (Id. at 8.) However, as the Government persuasively argues, the statement in the affidavit – that the shooter reported that Defendant was physically present in the car – was itself accurate, and there were many other facts related to this incident which Agent Endy could have marshaled to support probable cause.[3] (Doc. No. 508 at 25.) The Government addresses each of Defendant's statement-by-statement arguments in a similar fashion. The Court is persuaded by the Government that to the extent Agent Endy's affidavit excluded information favorable to Defendant, it also excluded information at least as unfavorable to Defendant, so the affidavit cannot be said to be materially misleading. See United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006) ("defendant must ultimately prove . . . that the affiant . . . made false statements or omissions . . . [that] were material, or necessary, to the probable cause determination"); see also id. at 383 n.8 (describing requisite preliminary showing before entitlement to a hearing).

---

[3] For example, the Government argues that Agent Endy could have "accurately reported [that the shooter] claimed to have [Defendant] in the back seat, where the assault rifle was. When [the shooter] saw [the victim], [the shooter] alone – without [Defendant's] assistance – continued to drive with his legs, reached behind the seat to gather the assault rifle, and shot [the victim] to death." (Doc. No. 508 at 25.)

9

## C. The good faith exception[4]

In addition, even if the Court were to find probable cause lacking, it would suppress evidence from the search only if the Court also found that the "good faith exception" to the exclusionary rule did not apply. Defendant argues that, due to alleged misrepresentations in Agent Endy's affidavit, the good faith exception should not apply here.

Where a warrant is defective or lacks probable cause, evidence from the search will not be suppressed when the officers that executed the search warrant acted in "objectively reasonable reliance" on the lawfulness of the warrant. United States v. Leon, 468 U.S. 897, 925 (1984). This exception to the exclusionary rule applies unless a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999). Courts have identified four situations where reliance on a signed search warrant would not be "in good faith:" (1) when the issuing magistrate "was misled by information in an affidavit that the affiant knew was false;"[5] (2) when "the issuing magistrate wholly abandoned [his or her] judicial role;" (3) when the affidavit in support of the warrant is "so lacking in the indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) when the warrant is so "facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing

---

[4] Given the Court's finding regarding probable cause, the Court considers the good faith exception only in the alternative.

[5] The Court observes that much of Defendant's arguments are addressed to this exception, rooted in Franks v. Delaware, 438 U.S. 154 (1978). See Leon, 468 U.S. at 914, 923. To avail himself or herself of this exception, a defendant must show "[1] that bad faith or reckless disregard existed on the part of the affiant, and [2] that there would have been no probable cause but for the incorrect statement." United States v. Shields, 458 F.3d 269, 276 (3d Cir. 2006).

officers cannot reasonably believe it was valid." Leon, 468 U.S. at 922-23. In those circumstances, a reasonable officer should not conduct a search, even where a facially valid search warrant authorizes one, and evidence uncovered in such a search will be suppressed. See id.

Defendant argues that the first situation applies because of Agent Endy's alleged misstatements, and that the third situation applies because of the "seven material discrepancies in the affidavit," caused by Agent Endy's misleading omissions. (Doc. No. 440 at 11.) However, as discussed above, the Court finds that the "discrepancies" Defendant identified, even if viewed as discrepancies, were not material to the probable cause analysis. Nor is there any reason to suggest that Agent Endy's statements were deliberately or recklessly false. Given these findings, the Court also finds that the officers could have reasonably relied on the search warrant. See Leon, 468 U.S. at 926 (applying good faith exception where the "warrant was clearly supported by much more than a 'bare bones' affidavit").

In sum, the Court finds that a substantial basis existed for Magistrate Judge Carlson to find probable cause to search Defendant's residence, and that even if no substantial basis existed, officers would still have been entitled to rely in good faith on the signed warrant. As such, the Court will not order evidence of the search suppressed.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion to suppress evidence from a search of the second floor apartment at 326 W. Philadelphia Street. An order consistent with this memorandum follows.