GMK:MAC:ale

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | NO. 1:14-CR-070 |
| | ) | |
| v. | ) | (JUDGE KANE) |
| | ) | |
| ANTHONY SISTRUNK, | ) | |
| Defendant. | ) | (ELECTRONICALLY FILED) |

GOVERNMENT'S RESPONE TO DEFENDANT'S MOTION TO
VACATE PURSUANT TO 28 U.S.C. § 2255

I.    RELEVANT PROCEDURAL HISTORY

On September 17, 2014, a grand jury returned an indictment

charging Anthony Sistrunk and twenty others with racketeering

conspiracy, drug trafficking conspiracy, and drug trafficking. Doc. 78.

The indictment alleged a conspiracy involving numerous individuals

over a twelve-year period who engaged in drug trafficking and violence

in a region of the City of York called the "Southside." Doc. 78.

Additionally, it alleged that Sistrunk and the others were a part of a

conspiracy to traffic five kilograms and more of cocaine and 280 grams

and more of cocaine base. Doc. 78.

In November 2015 after a two-month trial, a jury found Sistrunk

guilty on all. Doc. 925. Also, the jury found beyond a reasonable doubt

that Sistrunk conspired to, or was responsible for distribution of, more than five kilograms of cocaine and more than 280 grams of cocaine base. Doc. 923. The court ordered a presentence investigation which the probation office completed.

The Presentence Report (PSR) found that Sistrunk was a criminal history category III offender. PSR ¶¶ 270.  With a combined adjusted offense level of 49, the offense level was treated as an offense level of 43. PSR ¶¶260, 263. The sentencing guideline range was determined to be life in prison. PSR ¶301.

Atkinson contested most of the guideline calculations, including the drug weight calculation (U.S.S.G. §2D1.1(c)(1)) and obstruction of justice adjustment (U.S.S.G. §3C1.1).  After a full hearing on the merits, the Court denied his objections.

Sistrunk appealed his judgment of conviction and sentence to the Third Circuit. He raised for the first time a claim that this court erred when closing the courtroom during jury selection. The panel denied the appeal in a published decision. *United States v. Williams*, 974 F.3d 320 (3d Cir. 2020).  The judgment of the Third Circuit Court of Appeals was issued on September 10, 2020. Doc. 1621. On November 24, 2020,

Sistrunk's petition for rehearing *en banc* was denied, and the mandate was issued on December 2, 2020. Sistrunk and codefendants filed a petition for writ of certiorari, which was denied. *Rolando Cruz, Jr. et al v. United States*, 142 S.Ct. 309 (October 4, 2021).

On September 28, 2022, the defendant filed a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by a person in federal custody and a supporting brief. Docs. 1750, 1751. The government herein responds.

## II.    DISCUSSION

Under 28 U.S.C. §2255, a person who is in custody pursuant to a sentence imposed by a federal court and who alleges a violation of a constitutional right may file for relief. 28 U.S.C. §2255(f)(1). Sistrunk claims that he is serving a federal sentence as a result of a violation of his Sixth Amendment right to counsel, specifically, that he did not receive "reasonably effective assistance" of trial counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

In order for an ineffective assistance of counsel claim to be granted, the petitioner must first establish that his attorney's performance was deficient. *Strickland*, 466 U.S. at 687. "This requires

showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, petitioner must prove actual prejudice. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id. Accord, Harrington v. Richter*, 562 U.S. 86, 104 (2011).

The standard that the petitioner must meet is both "rigorous" and "highly demanding," and requires a showing of "gross incompetence" on counsel's part. *Kimmelman v. Morrison,* 477 U.S. 365, 381-82 (1986). Furthermore, to be successful the petitioner must establish both ineffectiveness of counsel *and* prejudice. *Strickland*, 466 U.S. at 687.

With respect to the performance prong, the petitioner must establish that his attorney's performance was unreasonable under prevailing professional norms. *Strickland* 466 U.S. at 687. Ultimately, the "issue is not what conduct is 'prudent or appropriate, but only what is constitutionally compelled.'" *Rompilla v. Horn*, 355 F.3d 233, 246 (3d Cir. 2004)(*quoting Burger v. Kemp*, 483 U.S. 776 (1987)); *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989)(2255 is available to "protect against a fundamental defect which inherently results in a complete

miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.")

When reviewing a trial counsel's conduct, "it is critical that courts be 'highly deferential' to counsel's reasonable strategic decisions and guard against the temptation to engage in hindsight." *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002)(*quoting Strickland*, 466 U.S. at 689-90). This deference triggers a "strong presumption" that counsel's decisions were part of a "sound ... strategy." *Buehl v. Vaughn*, 166 F.3d 163, 176 (3d Cir. 1999). "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different ... strategy would have fared better." *Rolan v. Vaugh*, 445 F.3d 671, 681-2 (3d Cir. 2006)(*citing Strickland*, 446 U.S. at 689). Since there are "countless ways to provide effective assistance in any given case," strategic choices as to how to defend a case are "virtually unchallengeable." *Strickland*, 466 U.S. at 689-90.

When determining whether trial counsel engaged in strategic decision making, one can speculate when it is based upon the record. *See, Buehl v. Vaughn*, 166 F.3d at 176. Where the record before the court affirmatively indicates that a §2255 claim is without merit, the

court may deny the claim without a hearing. *Virgin Islands, v. Nicolas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *Han Tak Lee v. Glunt*, 667 F.3d 397, 406-07 (3d Cir. 2012).

If this court finds that the attorney's performance was deficient, the court must then determine whether there was prejudice. Prejudice is generally defined as a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *Strickland*, 446 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Weeks v. Snyder*, 219 F.3d 245 (3rd Cir. 2000). It is "not enough" to show that counsel's errors had *some* conceivable effect on the outcome; rather counsel's errors "must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Harrington v. Richter,* 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687). Thus, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 687.

Allegations of ineffectiveness that are not developed in the

petition can be disposed of without a hearing. *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)("vague and conclusory allegations contained in a §2255 petition may be disposed of without further investigation by the District Court.")  Where allegations are clearly frivolous based on the existing record, the court can resolve the claims without the need for a hearing. *See, United States v. Arrington,* 13 F.th 331, 334 (3d Cir. 2021) (if allegations taken as true "clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing"); *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015).  However, certain factual disputes, particularly where issues of fact are dispositive, require a hearing. *Arrington*, 16 F. 4th at 334.

Issue 1: Plea Negotiations

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). To be effective, counsel must inform an accused of his sentencing exposure. *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015).  When it comes to providing counsel for a plea agreement, the

attorney must do more than notify a defendant of the terms of the plea offer. Counsel must notify him "of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992).

Sistrunk claims that trial counsel was deficient in this regard because he purportedly failed to provide an assessment of the sentencing guideline exposure. Dkt. 1751, p. 7. The claims are false.[1] Defense counsel advised Sistrunk of the sentencing exposure and consequences of taking a trial verses a guilty plea.

The government made plea offer to Sistrunk, which required him to enter a guilty plea to RICO Conspiracy with a 20 statutory maximum. Sistrunk refused the plea offer. In addition, Sistrunk refused to cooperate with authorities, and thus he went to trial. Sistrunk received effective assistance of counsel in the pretrial negotiations.

---

[1] The above representation is based upon communications with trial counsel during plea discussions. While maintaining attorney-client privileges, trial counsel has reported to the government that if ordered by the Court written communications are available which memorialize the advice provided by counsel in this regard.

To be successful, Sistrunk must establish a reasonable probability that, but for counsel's errors, he would have accepted the plea. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012); *Velazquez v. Superintendent SCI Fayette*, 937 F.3d 151, 162 (3d Cir. 2019).  Sistrunk cannot. According to Sistrunk's petition, he claims he would have accepted a guilty plea to the RICO conspiracy charge if he had been made aware of the prospect that his Guideline range would have been as lost approximately 10 years in prison. Dkt. 1751, p. 6-7.  He argues that if he was aware of this, he would have accepted the government's plea offer. The argument that he was prejudiced is unavailing.

As a starting point, Sistrunk bases his argument on an incorrect Sentencing Guideline calculation. He would not have faced a range of 135-168 months, as he claims. Dkt. 1751, p. 7.  Instead, he would have faced a range of 240 to 240 months. This calculation is based upon the Presentence Report's determination of an offense level of 43 with a criminal history category of III. A three-level reduction for acceptance of responsibility would not have changed this calculation. Thus, even if Sistrunk's rendition of counsel's advice was believed, the purported advice was accurate to the extent that his Guideline range did go as

high as 20 years. If Sistrunk's thought process is accurately outlined in his petition for relief, he rejected the plea then because he thought he could have gotten 20 years in prison. It is reasonable to infer that even if is allegations ineffective assistance are believed, he would have rejected the plea. Without prejudice, the claim should be dismissed.

Issue 2. "Live by the 5" Tattoo

Sistrunk argues that his trial counsel was ineffective in how he objected to the introduction of his "Live by the 5" tattoo. Sistrunk argues that basing the objection only on FRE 403 was below the standard of advocacy required by the Sixth Amendment's right to counsel. Dkt. 1751, p. 22-25. He posits that a better argument would have been to challenge the evidence pursuant to FRE 404(b). The claim of ineffectiveness fails on both prongs.

A defendant has no constitutional right to compel counsel to "press nonfrivolous points" if counsel, "as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). While a defendant may certainly challenge the effectiveness of his counsel's advocacy, counsel is given broad discretion in how to pursue an argument. *See Garza v. Idaho*, --- U.S. ---, 139 S.

Ct. 738, 746 (2019) (while the defendant decides whether to pursue an appeal, "the choice of what specific arguments to make within that appeal belongs to appellate counsel").

In this case, the Superseding Indictment charges an association-in-fact enterprise identified as the "Southside", which was affiliated with the Bloods gang.  Dkt. 78.  Sistrunk's association with the Southside and by implication the Bloods was alleged in the indictment. When a defendant's criminal conduct is alleged in an indictment, that evidence is generally admissible, constrained only by relevance and prejudice. Fed. R. Evid. 401, 403.  Evidence of crimes that are "intrinsic" to the charged offenses are likewise constrained by the same. *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010) cert. denied, 131 S. Ct. 363 (2010); *United States v. Williams*, 647 F.App'x 144, 147 (3d Cir. 2016). A crime is considered "intrinsic" to the crime charged if it directly proves the charged offense. *Green*, 617 F.3d at 249. Additionally, an uncharged offense is considered intrinsic to the crime if it was "performed contemporaneously with the charged crime" and "facilitate[d] the commission of the charged crime." *Green*, 617 F.3d at 248-49. Otherwise, the evidence of uncharged conduct is considered

extrinsic to the charged offense. *Id.* In this case, counsel was not ineffective for failing to pursue Rule 404(b) challenge because evidence of his association with the Bloods is intrinsic to the crimes charged.

Even it was not intrinsic, it still may be admissible if offered for a proper purpose under Rule 404(b). *Id.* Rule 404(b) bars evidence of a crime or other act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The evidence, however, "may be admissible for another purpose." Fed. R. Evid. 404(b)(2). "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988). Rule 404(b) provides a list of permissible uses, but this list is not exclusive. *United States v. Sampson*, 980 F.2d 883, 886 (3d Cir. 1992). Moreover, Rule 404(b) favors admissibility. *Id. See also United States v. Johnson*, 2021 WL 5412591 (3d Cir. Nov. 19, 2021).

Courts apply a four-part test to determine the admissibility of evidence of prior bad acts. *United States v. Cruz*, 326 F.3d 392, 395 (3d

Cir. 2003). The evidence must: (1) have a proper evidentiary purpose under Rule 404(b); (2) be relevant to that purpose under Rule 402; (3) pass the balancing test under Rule 403; and (4) be accompanied by a limiting instruction, upon request. *Huddleston*, 485 U.S. at 691-92; *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010); *Sampson*, 980 F.2d at 886. Evidence of Sistrunk's association the Bloods would be admissible under this standard because it would prove his intent to participate in the conspiracy, which was relevant to the issue contested throughout the trial.

Based upon the above, Sistrunk cannot establish ineffectiveness or prejudice from his counsel's failure to pursue FRE 404(b) argument.

Issue 3. Courtroom Closure

Sistrunk claims that his counsel was ineffective for failing to object to the court's closure of the courtroom during jury selection. While the government does not contest that an objection would have been warranted, Sistrunk cannot establish prejudice. As a result the claim is without merit.

The Sixth Amendment guarantees the right of the accused to a public trial. U.S. CONST. amend. VI; *Waller v. Georgia*, 467 U.S. 39, 46

(1984). Jury selection is a phase of a criminal trial that should be open to the public. *Presley v. Georgia*, 558 U.S. 209 (2010) (*per curiam*). However, the right to public access is not absolute. While "courtroom closure is to be avoided, [] there are some circumstances when it is justified." *Weaver v. Massachusetts*, --- U.S. ---, 137 S. Ct. 1899, 1909 (2017).  However, before a judge may deprive a defendant of his right to an open courtroom, a judge is to make proper factual findings in support of the decision to do so. *Weaver,* 137 S. Ct. at 1909. In this case, the court entered a written order on the docket closing the courtroom to the public during jury selection due to courtroom capacity limitations. Dkt. 737.   No counsel for the twelve defendants objected to the order. Nor was there any indication on the record that spectators desired to watch the jury selection process.  Although the public was not present, there was at least twenty-five people in defense camp present for the jury selection, including all twelve defendants, at least twelve defense counsel, and the jury selection expert jointly used by all defendants. The government does not contest counsel should have objected. The issue is prejudice.

        To place the claim of prejudice in context, it is important to review

how the Third Circuit addressed a similar issue on direct appeal. As was previously noted, no defendant objected at trial to the courtroom closure, but several, including Sistrunk, raised the issue on direct appeal. *Williams*, 974 F.3d at 340. Because the claim was not preserved at the trial court, the circuit reviewed the issue for plain error. *Id*. They found none. *Id*. Central to the determination of the Third Circuit was their finding that a remedy was not appropriate after weighing "the costs of the fairness, integrity, and public reputation of judicial proceeding that would result from allowing the error to stand" against remanding for new proceedings. *Id*. at 344.

The Circuit held that normally closing a courtroom for jury selection, without proper balancing of the defendant and the public's Sixth Amendment interests in public proceeding, is structural error. *Id*. at 340.  Structural errors differ from ordinary constitutional errors, which are reviewed for harmless error. *Id*. Structural errors are the "limited class of fundamental constitutional errors that, by their very nature, affect substantial rights and so cannot be disregarded." *Id*. (internal citations omitted). However, using plain error analysis, the Third Circuit did not find automatic prejudice resulting from the

courtroom closure. The circuit, instead, held that a reviewing court "should evaluate the error in the context of the unique circumstances of the proceeding as a whole to determine whether the error warrants remedial action." *Id*. at 342.  In so doing, the circuit focused on the fourth factor of the plain error test. "[T]he Court [] weighed the costs to the fairness, integrity, and public reputation of judicial proceedings that would result from allowing the error to stand with those that would alternatively result from providing a remedy." *Id*. at 344. The Circuit found that on balance there was no plain error. *Id*. at 347.

Even though the government concedes deficient performance by his trial counsel, to be successful Sistrunk must also establish prejudice. *Strickland*, 446 U.S. at 694.  As was mentioned above, prejudice is established in the ordinary ineffectiveness claim by asking whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Weaver*, 137 S.Ct. at 1910 (quoting *Strickland* 466 U.S., at 694). But, as the *Weaver* court explained, prejudice should not be addressed in a mechanical fashion and the ultimate inquiry must concentrate on "the fundamental fairness of the proceeding." *Id*.

16

The petitioner in *Weaver* argued to the Supreme Court that a different prejudice standard should apply in structural error cases. They offered a standard for courtroom closures that asks whether the convicted person can show "that attorney errors rendered the trial fundamentally unfair." *Weaver*, 137 S.Ct. at 1911. The Supreme Court did not expressly adopt Weaver's "fundamentally unfair" standard, nor has the Court subsequently adopted it. *Id*. Instead, "[f]or the analytical purpose of this case," the Supreme Court applied the standard. *Id*.

After weighing fundamental fairness interests, the Supreme Court rejected Weaver's claim that courtroom closure during jury selection rendered his entire trial fundamentally unfair. *Id*. They held that there are "some cases [were] an unlawful closure might take place and yet the trial still will be fundamentally fair from the defendant's standpoint." *Id*. at 1910. The Court's exposition of the Weaver facts and analysis of fundamental fairness is instructive:

> Although petitioner's mother and her minister were indeed excluded from the courtroom for two days during jury selection, petitioner's trial was not conducted in secret or in a remote place. The closure was limited to the jury voir dire; the courtroom remained open during the evidentiary phase of the trial; the closure decision apparently was made by court officers rather than the judge; there were many

members of the venire who did not become jurors but who did observe the proceedings; and there was a record made of the proceedings that does not indicate any basis for concern, other than the closure itself.

There has been no showing, furthermore, that the potential harms flowing from a courtroom closure came to pass in this case. For example, there is no suggestion that any juror lied during voir dire; no suggestion of misbehavior by the prosecutor, judge, or any other party; and no suggestion that any of the participants failed to approach their duties with the neutrality and serious purpose that our system demands.

It is true that this case comes here on the assumption that the closure was a Sixth Amendment violation. And it must be recognized that open trials ensure respect for the justice system and allow the press and the public to judge the proceedings that occur in our Nation's courts. Even so, the violation here did not pervade the whole trial or lead to basic unfairness.

*Id.* at 1913 (internal citations omitted).

If the fundamental fairness standard is applied, as the petitioner in *Weaver* suggested, the claim fails. On direct appeal, the Third Circuit balanced the issues of fundamental fairness and found it was not in the interests of justice to provide a remedy. This Court should do likewise for the same reasons identified by the majority. *Williams*, 974 F.3d at 346.

Since *Weaver*, the Supreme Court has not revisited what prejudice

standard applies for habeas review of structural error claims.  The Third Circuit has. They have held that a defendant "must prove prejudice." *Barney v. Administrator of New Jersey State Prisons*, 48 F.4th 162, 165 (3d Cir. 2022) (habeas corpus review of claim that petitioner's Sixth Amendment right to represent himself was infringed, petitioner's claim denied for failure to demonstrate petitioner suffered prejudice); *see also Baxter v. Superintendent Coal Township SCI*, 998 F.3d 542, 549 (3dCir. 2021) (petitioner must prove prejudice arising from trial counsel's failure to object to reasonable doubt instruction even though instruction may constitute structural error).

Sistrunk simply cannot establish prejudice. He generally alleges prejudice and notes that there were members of the public who would have been present for jury selection. To the extent that he is arguing their presence would have changed the outcome of the proceedings, the claim is without merit.

While a public trial can benefit the accused to the extent that "the presence of interested spectators may keep the defendant's trier keenly alive to a sense of their responsibility and to the importance of their functions," *Williams*, 974 F.3d at 346 (*quoting Waller*, 467 at 46), here

the public was excluded for two-days of jury selection in a seven-week trial. The potential for prejudice is confined to the jury selection. The transcriptions of the jury selection were public. There is no indication that any juror falsified information or would have otherwise been exposed as unqualified to serve if the proceedings had been public. Nor is there evidence that the judge, prosecutors, or other court personnel engaged in misconduct during jury selection which would have been minimized or thwarted by a public proceeding.

Additionally, there were at least twenty-five people in the defense camps who watched the jury selection process. This is a far cry from the normal public presence at jury selection. Due to the size of the venire panel and the number of defendants, the courtroom was packed with people. So, although the venire members do not qualify as the "public" for Sixth Amendment purposes, the distinction between members of the public and fellow venire members was probably lost on the individuals as they proceeded through jury selection. The combination of people in the packed courtroom, plus their oath and admonition that all they say was being stenographically recorded, placed sufficient social and legal pressure on each juror to answer honestly that the court should have

confidence that allowing some members of the public to watch the proceedings would have changed nothing. This dynamic was only amplified by the twenty-five plus members of the defense camps who were present and scrutinizing the venire members. Any suggestion that a more public spotlight on jury selection would have resulted in a different jury is pure speculation. There is nothing to suggest that a different jury would have resolved this case differently.

## III.    CONCLUSION

WHEREFORE, it is respectfully requested that the Court deny the defendant's motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by a person in federal custody.

Respectfully submitted,

GERARD M. KARAM
United States Attorney

 s/ Michael A. Consiglio
Michael A. Consiglio
Assistant U.S. Attorney
Attorney ID. PA 76103
228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, Pennsylvania 17108
(717) 221-4482
November 23, 2022       Michael.consiglio@usdoj.gov

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | NO. 1:14-CR-070 |
| | ) | |
| v. | ) | (JUDGE KANE) |
| | ) | |
| ANTHONY SISTRUNK | ) | |
| Defendant. | ) | (ELECTRONICALLY FILED) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers. That on this 23rd day of November, 2022, he served a copy of the attached

GOVERNMENT'S RESPONE TO DEFENDANT'S MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255

by electronic filing to the persons hereinafter named:

Anthony Sistrunk, Inmate No. 72326-067
FCI Pollock

 s/ Michael A. Consiglio
Michael A. Consiglio
Assistant U.S. Attorney

22